Present: Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and
Kinser, JJ., and Poff, Senior Justice

RICHARD DAVID FISHBACK

                                        OPINION BY
v.  Record No. 991615        JUSTICE LAWRENCE L. KOONTZ, JR.
                                        June 9, 2000
COMMONWEALTH OF VIRGINIA


             FROM THE COURT OF APPEALS OF VIRGINIA


     In this appeal, we primarily consider whether a defendant

in a non-capital felony trial is entitled to have the jury

instructed that, pursuant to Code § 53.1-165.1, parole has been

abolished in Virginia.

                          BACKGROUND

     Because our review is limited to the issue of whether the

trial court erred in failing to instruct the jury on the

abolition of parole, a succinct statement of the facts,

presented in the light most favorable to the Commonwealth as the

party prevailing below, will suffice.

     On March 24, 1997, the grand jury of Fauquier County

returned indictments against Richard David Fishback charging him

with robbery, Code § 18.2-58, three counts of abduction, Code

§ 18.2-47, and four related firearm charges, Code § 18.2-53.1.

During a two-day bifurcated jury trial conducted in the Circuit

Court of Fauquier County, the Commonwealth's evidence during the

guilt-determination phase showed that on the afternoon of

January 7, 1997, Fishback, armed with a handgun, robbed an employee of a convenience store and unlawfully detained two store employees and a customer with intent to deprive them of their personal liberty. Based upon the evidence, the jury convicted Fishback of all eight felony offenses charged in the indictments.

During the penalty-determination phase, Fishback's counsel proffered jury instruction "No. S" stating that "there is no parole in Virginia." The trial court inquired whether counsel had "authority for that instruction?" Counsel replied that she did not have authority for this instruction, but asserted that it "is just the current state of the law now." The trial court ruled that "[i]t is not an approved instruction," refused to give it to the jury, and noted counsel's objection.

The trial court then addressed instruction "No. T" proffered by Fishback's counsel which directed the jury to "assume that [the defendant] will actually serve all of the jail or prison time you find to be an appropriate sentence and you are not otherwise to concern yourselves with what may happen afterwards." The trial court again inquired whether counsel had authority for this instruction. She replied that she had "prepared this instruction knowing that many times a jury returns with questions about the amount of time a person will serve and probation and things of that nature. That is what

2

this instruction was designed by me to address." The trial court refused the instruction, but noted that "[i]f the jury sends a question . . . about . . . probation or parole or how much time [Fishback] is going to serve . . . then I will deal with that issue should it arise."

During its deliberations on sentencing, the jury sent a note to the trial court, which read as follows:

<u>Question:</u>

1. Will these terms run
    Consecutively?
    Concurrently?

2. Can the sentence be reduced by the judge.

3. Can he qualify for parole
    Robbery?
    Abduction?
    Firearms?

After a brief discussion of the questions with both counsel, the trial court indicated that it would "propose giving the model [jury] instruction" the Commonwealth had prepared. This instruction stated that "[h]aving found [Fishback] guilty, you should impose such punishment as you feel is just under the evidence and within the instructions of the Court. You are not to concern yourselves with what may happen afterwards." Fishback's counsel did not object to this instruction or renew her request that the trial court instruct the jury that parole had been abolished.

After further deliberations, the jury returned verdicts sentencing Fishback to terms of imprisonment of thirty years for robbery, seven years for each of the abductions, and a total of eighteen years for the firearm offenses.  Following receipt of a pre-sentence report, the trial court imposed the jury's sentences to run consecutively, but suspended fifty-one years of the sentences on condition that Fishback serve ten years probation following his release.

Fishback filed a petition for appeal in the Court of Appeals asserting issues related to the sufficiency of the evidence to prove abduction and the firearm offenses predicated on abduction, the denial of a suppression motion, the refusal of an instruction defining abduction, and the refusal of the instruction concerning the abolition of parole.  By order dated November 13, 1998, the Court of Appeals awarded an appeal for the first four of these issues, but denied an appeal on the parole issue.  In that order, the Court of Appeals, quoting from Briscoe v. Commonwealth, 26 Va. App. 415, 417, 494 S.E.2d 898, 899 (1998), noted that it had previously held that "a trial court is not required to instruct the jury on a defendant's eligibility for parole in non-capital cases."  After oral argument on the issues for which an appeal had been awarded, the Court of Appeals affirmed Fishback's convictions in an

unpublished opinion.  Fishback v. Commonwealth, Record No. 1377-98-4 (June 15, 1999).

Fishback filed a petition for appeal in this Court reasserting the issues reviewed by the Court of Appeals in its order and opinion.  We awarded Fishback an appeal limited to the issue of whether the trial court "erred in refusing appellant's proffered penalty phase instruction that parole has been abolished in Virginia."[1]

DISCUSSION

In Yarbrough v. Commonwealth, 258 Va. 347, 519 S.E.2d 602 (1999), we noted that the abolition of parole pursuant to Code § 53.1-165.1 and the exclusion of prisoners serving life sentences for class one felonies from being eligible for geriatric release pursuant to Code § 53.1-40.01 rendered a defendant convicted of capital murder parole-ineligible.  See id. at 368 n.7, 519 S.E.2d at 612 n.7.  Reviewing the rule, first stated in Coward v. Commonwealth, 164 Va. 639, 646, 178 S.E. 797, 799 (1935), that a jury should not be instructed upon the possibility of parole, we held that "[t]he Coward rule simply does not address [the] unique situation" in which a jury must elect between a death sentence and a sentence of life

---

[1]Accordingly, only Fishback's sentences, and not his convictions, are at issue in this appeal.

5

without possibility of parole. Yarbrough, 258 Va. at 372, 519 S.E.2d at 615. Accordingly, we further held that a defendant convicted of capital murder was entitled to an instruction that he would be parole-ineligible if sentenced to life imprisonment.[2] Id. at 374, 519 S.E.2d at 616.

In rendering our decision in Yarbrough, we recognized "that the limitations placed upon the availability of parole by Code §§ 53.1-40.01 and 53.1-165.1 may call into question the continued viability of the Coward rule in a non-capital felony case." Id. at 373, 519 S.E.2d at 615. However, we emphasized that our decision in Yarbrough was "limited to the effect of Code § 53.1-165.1 on capital murder prosecutions." Id. Accordingly, this appeal presents the first opportunity since that decision for this Court to examine the effect of the statutory abolition of parole on the Coward rule in non-capital cases.

Our decision in Yarbrough is not dispositive of the issue presented in this case. This is so because a defendant

---

[2]Such an instruction was already required where the Commonwealth elected to present evidence of the defendant's future dangerousness to society. See Simmons v. South Carolina, 512 U.S. 154, 161-62 (1994) (plurality opinion); Mueller v. Murray, 252 Va. 356, 362, 478 S.E.2d 542, 546-47 (1996). Our decision in Yarbrough was not premised on the due process concerns expressed in Simmons, but on the effect of the changes in the statutes governing parole on the continued viability of the Coward rule. Yarbrough, 258 Va. at 367, 519 S.E.2d at 612.

6

convicted of a non-capital felony committed after the effective date of Code § 53.1-165.1, while no longer eligible for parole, may nonetheless be eligible for geriatric release, Code § 53.1-40.01, and may also qualify for a reduction in sentence through an earned sentence credit calculation, Code §§ 53.1-202.2 et seq., commonly referred to as a "good behavior credit." Although neither of these provisions is defined as "parole" in the Code, they are nonetheless respectively a form of early release and a form of sentence reduction available to a prisoner under the administration of the executive branch of government.

Discussing the policy underlying the Coward rule, we have noted that "[u]nder our system, the assessment of punishment is a function of the judicial branch of government, while the administration of such punishment is a responsibility of the executive department.  The aim of the rule followed in Virginia is to preserve, as effectively as possible, the separation of those functions during the process when the jury is fixing the penalty, in full recognition of the fact that the average juror is aware that some type of further consideration will usually be given to the sentence imposed."  Hinton v. Commonwealth, 219 Va. 492, 496, 247 S.E.2d 704, 706 (1978).  Accordingly, unlike the unique circumstances of the sentencing decision to be made by a jury in a capital murder trial, where the executive branch will have no discretion to reduce a life sentence through parole or

7

geriatric release, it would be inaccurate to inform a jury that a defendant convicted of a lesser felony would not be eligible for early release in every instance.

One of the conundrums created by the interaction of Code §§ 53.1-40.01, 53.1-165.1, and 53.1-202.2 et seq. is that, depending on the length of the sentences imposed and the age of the defendants, some persons convicted of non-capital felonies will not be eligible for any form of early release, while others may be able to benefit from geriatric release, good behavior credits, or both.  Moreover, it is apparent on the record of this case, and of countless others reviewed by this Court and the Court of Appeals, see, e.g., Clagett v. Commonwealth, 252 Va. 79, 94, 472 S.E.2d 263, 272 (1996); Mosby v. Commonwealth, 24 Va. App. 284, 287, 482 S.E.2d 72, 73 (1997), that juries frequently have no comprehension of the current state of parole eligibility in this Commonwealth, but remain concerned that their sentencing decisions will be subjected to extensive reductions by executive action.  See, e.g., Yarbrough, 258 Va. at 358, 519 S.E.2d at 607 (jury question to the trial court asking whether a life sentence meant "your entire life or does it have a certain limit such as 12 years?").  For these reasons and in light of the significant limitations which are now placed on the executive branch in modifying the sentences imposed on defendants by the judicial branch as the result of the enactment

8

of Code §§ 53.1-40.01, 53.1-165.1, and 53.1-202.2, et seq. it is not merely appropriate, but requisite, that we reconsider the policy underlying the Coward rule.[3]

We begin that reconsideration with the acknowledgement that while "truth in sentencing" is a goal to be desired in the judicial process, it is necessarily an elusive one when a jury has the responsibility to fix punishment. This is so, in part, because under our system, as we noted in Hinton, the assessment of punishment against a defendant and the subsequent administration of that punishment are separate functions of the judicial and executive branches of government respectively. However, the specific reason is that after imposition of the jury's punishment, the conduct of the defendant will control the length of that punishment to a significant degree. In short, there can be no guarantee that a defendant will earn some form of statutorily permitted early release from the punishment fixed by the jury and yet the jury may attempt to factor some form of anticipated early release into its determination of punishment.

---

[3]We are confirmed in this decision by the action of the General Assembly, which, in its most recent session, amended Code § 19.2-264 to codify the effect of our decision in Yarbrough and in that same action directed "[t]hat the Virginia Supreme Court, in conjunction with the Virginia State Bar, investigate and recommend to the General Assembly on or before January 1, 2001, model jury instructions for felonies, not including capital murder, concerning the abolition of parole." House Bill 705 (2000).

Nevertheless, to perform its responsibility a jury is required to consider a broad range of punishment in terms of years of confinement statutorily established by the legislature. Pertinent to the present case, for example, Code § 18.2-58 provides for a range of punishment between a term of life to any term not less than five years for robbery, and a violation of Code § 18.2-47 is a Class 5 felony punishable by a term of not less than one year nor more than ten years for abduction.  See Code § 18.2-10(e).  However, within the permissible range of punishment a jury is required to determine a specific term of confinement that it considers to be an appropriate punishment under all the circumstances revealed by the evidence in the case.  A jury should not be required to perform this critical and difficult responsibility without the benefit of all significant and appropriate information that would avoid the necessity that it speculate or act upon misconceptions concerning the effect of its decision.  Surely a properly informed jury ensures a fair trial both to the defendant and the Commonwealth.

The question then becomes how a jury is to be instructed so that it is properly informed and can render a fair trial to both parties while preserving, as effectively as possible, the separation of the functions of assessing punishment and administering it.  With regard to the issue of parole, the

10

answer lies primarily in the enactment of Code § 53.1-165.1 which, in pertinent part, provides that "[a]ny person sentenced to a term of incarceration for a felony offense committed on or after January 1, 1995, shall not be eligible for parole upon that offense."

Code § 53.1-165.1 is clear and, as to those offenses to which it applies, it leaves no room for speculation by a jury as to what might occur thereafter during the executive department's administration of the sentence imposed. Moreover, as a result of the enactment of this statute the policy underlying the Coward rule is eroded. The executive branch no longer has the discretion to grant or deny parole because this statute abolishes parole. Thus, in the context of achieving the goal of "truth in sentencing," it simply defies reason that this information ought not to be provided to the jury by an instruction of the trial court.

However, it is equally clear, as we have noted, that it would be inaccurate to inform a jury that a defendant convicted of a non-capital felony would not be eligible for early release in every instance. Indeed, for every person convicted of a non-capital felony offense committed on or after January 1, 1995, the provisions of Code § 53.1-40.01 and Code §§ 53.1-202.2 et seq. are implicated and conditionally provide for forms of early release and sentence reduction. Because such early release and

11

sentence reduction provisions are not mandatory, the policy concerns underlying the Coward rule logically remain viable, although to a lesser extent.  Nonetheless, because those statutory provisions represent a clear departure from the broad discretion given to the executive branch under the prior law with regard to early release and sentence reduction, we believe that strict adherence to the Coward rule is no longer appropriate.

Although we have discussed Code § 53.1-40.01 and Code §§ 53.1-202.2 et seq. in the context that these statutes provide for forms of early release and sentence reduction, they are distinctively different with regard to the issue of parole eligibility in this appeal.  The former is more in the nature of a parole statute than the latter.  Indeed, Code § 53.1-40.01, in pertinent part provides that:

> Any person serving a sentence imposed upon a conviction for a felony offense, other than a Class 1 felony, committed on or after January 1, 1995, (i) who has reached the age of sixty-five or older and who has served at least five years of the sentence imposed or (ii) who has reached the age of sixty or older and who has served at least ten years of the sentence imposed may petition the Parole Board for conditional release.

(Emphasis added).

In contrast, the Board of Corrections, pursuant to Code § 53.1-202.4, is required, among other things, to establish the criteria upon which a person shall be deemed to have earned or

12

forfeited sentence credits.  In addition, Code § 53.1-202.3 limits the maximum rate at which sentence credits may be earned.

However, for purposes of our present analysis with regard to the Coward rule, the most significant distinction between the statutory provisions for geriatric release and sentence reduction for good behavior credit is a matter of application and predictability.  The determination of a prisoner's eligibility for geriatric release is essentially a mathematical calculation.  The age of the prisoner and the years served of the sentence imposed are readily determinable and, thus, not subject to speculation.  A prisoner's eligibility for early release for good behavior credit does not involve such a clear-cut calculation.  Rather, under the applicable statutory provisions, eligibility for sentence reduction for good behavior credit necessarily involves the unpredictable conduct of a prisoner, and to a significant degree the subjective assessment of that conduct by employees of the Department of Corrections, with regard to compliance with rules and participation in various programs established and administered by the Board of Corrections.  Thus, when attempting to factor good behavior credit into its determination of an appropriate sentence, a jury would be required to speculate on the unpredictable conduct thereafter of a particular defendant and the assessment of that conduct by the executive branch of government.  The avoidance of

13

such speculation underlies the Coward rule because speculation by the jury is inconsistent with a fair trial both to the defendant and the Commonwealth.

For these reasons, we are of opinion that a new rule is both appropriate and mandated as a result of the statutory enactments discussed above. Accordingly, we will direct that henceforth juries shall be instructed, as a matter of law, on the abolition of parole for non-capital felony offenses committed on or after January 1, 1995 pursuant to Code § 53.1-165.1. In addition, because Code § 53.1-40.01 is in the nature of a parole statute, where applicable juries shall also be instructed on the possibility of geriatric release pursuant to that statute.

Under this new rule, the task of the trial courts will require only that instructions with regard to the abolition of parole be tailored to the facts of a particular case. Thus, when a defendant's age and the permissible range of punishment for the offense in question totally negate the applicability of Code § 53.1-40.01, the jury will be instructed that the defendant is not eligible for parole in accordance with Code § 53.1-165.1. In those cases where geriatric release is a possibility, then the jury will be instructed in accordance with the applicable provisions of Code § 53.1-40.01 along with the instruction that parole is otherwise abolished.

14

This new rule, however, does not include the requirement that juries also be instructed with regard to the provisions of Code §§ 53.1-202.2 et seq. As explained above, at the time a jury assesses punishment it does not, and cannot, have a factual basis upon which to factor the provisions for good behavior credit into its determination of an appropriate sentence in a given case. Rather, such an effort would be an exercise in pure speculation. Consequently, juries are not to be instructed with regard to these statutory provisions.[4]

In light of this new rule and the limitation we have placed on it with regard to jury instructions concerning good behavior credits and executive clemency, we will overrule Coward and its progeny to the extent that they are inconsistent with this opinion. In addition, because this is a new rule of criminal procedure it is limited prospectively to those cases not yet final on this date. See Mueller, 252 Va. at 361, 478 S.E.2d at 545.

---

[4]For the same reasons, we now also hold that the Commonwealth will not be permitted an instruction on the matter of executive clemency. We take this opportunity to do so to clarify the extent of the new rule we adopt today and to resolve the issue left unresolved in Yarbrough. See Yarbrough, 258 Va. at 376, 519 S.E.2d at 618 (Compton, J., dissenting).

We now turn to the specific circumstances of Fishback's case.[5]  Initially, we note that Fishback's proposed instruction "No. S" was not wholly accurate because it suggested that he would not be eligible for any form of early release.  Because Fishback was forty-four years of age at the time the jury considered its sentence, under the permissible sentencing range for the robbery and abduction offenses for which he had been convicted he would become eligible for geriatric release under Code § 53.1-40.01 when he reached age sixty.  In addition, Fishback's proposed instruction "No. T" was not accurate because it would have told the jury to assume that he would serve the entire sentence imposed even though under Code § 53.1-202.3 good time credits can result in a reduction of a sentence by fifteen percent.  These deficiencies in his proffered instructions, however, do not bar our consideration of the issue presented in this appeal.

It is axiomatic that "[i]t belongs to the [trial] court to instruct the jury as to the law, whenever they require instruction, or either of the parties request it to be given."

---

[5]Fishback does not contend that the jury's inquiry concerning whether the terms of confinement will run consecutively or concurrently and the further inquiry concerning whether the sentence can be reduced by the judge were subject to an instruction.  Accordingly, we do not address those inquires in this appeal.

Thornton v. Commonwealth, 65 Va. (24 Gratt.) 657, 662 (1874).

Moreover, pertinent here, we have stated that:

> We adhere to the rule that the trial court is not
> required to amend or correct an erroneous instruction,
> but the rule is subject to the limitation that when
> the principle of law is materially vital to a
> defendant in a criminal case, it is reversible error
> for the trial court to refuse a defective instruction
> instead of correcting it and giving it in the proper
> form.  A jury should not be left in the dark on the
> subject.

Whaley v. Commonwealth, 214 Va. 353, 355-56, 200 S.E.2d 556, 558 (1973).

The jury's knowledge of the abolition of parole was materially vital to Fishback's case in the penalty-determination phase of his trial.  Under our holding above, he was entitled to have the jury properly instructed on that matter.  Thus, the trial court erred in refusing to give a proper instruction to the jury on the abolition of parole including the availability of geriatric release.

## CONCLUSION

Accordingly, Fishback's sentences will be vacated, the order appealed from reversed, and the case remanded to the Court of Appeals with directions to remand the same to the trial court for a new sentencing hearing.

Reversed and remanded.

JUSTICE KINSER, dissenting.

17

In *Yarbrough v. Commonwealth*, 258 Va. 347, 519 S.E.2d 602 (1999), this Court acknowledged that "it has long been held in this Commonwealth that it is error for the trial court to instruct the jury that the defendant would be <u>eligible</u> for parole or could <u>benefit</u> from an executive act of pardon or clemency." *Id.* at 369, 519 S.E.2d at 613 (citing *Hinton v. Commonwealth*, 219 Va. 492, 496, 247 S.E.2d 704, 706 (1978); *Jones v. Commonwealth*, 194 Va. 273, 279, 72 S.E.2d 693, 696-97 (1952); *Coward v. Commonwealth*, 164 Va. 639, 646, 178 S.E. 797, 799 (1935)). The policy underlying that rule is twofold. First, a "jury should not be permitted to speculate on the potential effect of parole, pardon, or an act of clemency on its sentence because doing so would inevitably prejudice the jury in favor of a harsher sentence than the facts of the case might otherwise warrant." *Yarbrough*, 258 Va. at 372, 519 S.E.2d at 615. Equally important is the separation of powers between the judicial and executive branches of government. In our criminal justice system, the judicial branch of government assesses punishment, and the executive branch administers that punishment. *See* *Hinton*, 219 Va. at 496, 247 S.E.2d at 706. "The aim of the rule followed in Virginia is to preserve, as effectively as possible, the separation of those functions during the process when the jury is fixing the penalty . . . ." *Id.*

However, in Yarbrough, we created an exception to that rule in capital murder cases because, with the abolition of parole in Virginia, see Code § 53.1-165.1, and the unavailability of geriatric release, see Code § 53.1-40.01, "[t]he Coward rule simply does not address [the] unique situation" presented to a jury when it must elect between imposing the death penalty or a sentence of life. Yarbrough, 258 Va. at 372, 519 S.E.2d at 615. There, we said that "this unique situation arises from the fact that a defendant sentenced to life imprisonment for capital murder, a class one felony, is not subject to 'geriatric parole.'" Id. Thus, in capital murder cases, under the rule announced in Yarbrough, there is no danger that the judicial branch will exceed its role in assessing punishment by taking into account matters within the province of the executive branch.

Today, the majority extends the exception recognized in Yarbrough to non-capital felony cases even though in such cases, the executive branch, in administering the sentence, continues to have available certain forms of sentence reduction, such as earned sentence credits, see Code §§ 202.2 through -202.4, and geriatric release. Because I believe that the majority's decision will blur the lines between the judicial branch of government and the executive branch, see Va. Const. art. I, § 5, I respectfully dissent.

The majority recognizes that it would be unfair to the Commonwealth to instruct a jury that parole is no longer available in Virginia without also, in appropriate cases, advising the jury about geriatric release. However, the majority also states its view that the jury should not be instructed about executive clemency, see Code §§ 53.1-229 through -231, or earned sentence credits. While the majority's view on the propriety of instructing the jury about earned sentence credits or executive clemency comports with the doctrine of stare decisis in that it follows our long-standing precedent, see Hinton, 219 Va. at 495, 247 S.E.2d at 706, Coward, 164 Va. at 646, 178 S.E. at 799, precedent that the majority overrules today in other respects, the majority reaches its decision not by adhering to our prior decisions, which were well-grounded in public policy, but rather by distinguishing between what it considers to be the speculative nature of various types of sentence reduction available to the executive branch.

Claiming to find geriatric release and earned sentence credits "distinctively different," the majority posits that, because the eligibility of a prisoner to petition the Parole Board for conditional geriatric release can be easily calculated, a jury's knowledge of geriatric release would not lead to speculation by it in determining an appropriate

20

sentence. However, in making this distinction, the majority fails to recognize that the availability of geriatric release and the award of earned sentence credits both involve the discretion of the executive branch.

An examination of the statutes creating geriatric release and earned sentence credits indicates that consideration of either one by a jury in its sentencing decision would involve speculation. The statute authorizing geriatric release provides that a prisoner may petition the Parole Board for such release. However, the statute does not mandate release when a prisoner reaches age 65 and has served 5 years, or age 60 and has served 10 years, but authorizes the Parole Board to promulgate regulations to implement the provisions of that statute. Code § 53.1-40.01.[6] Likewise, the executive branch is given discretion in fashioning standards under which prisoners can qualify for earned sentence credits. Code § 53.1-202.4. In fact, the very same "unpredictable conduct of a prisoner, and . . . subjective assessment of that conduct . . . with regard to compliance with rules and participation in various programs

_____

[6] The Parole Board has not promulgated those regulations to date, although it has issued manuals that contain rules implementing the provisions of Code § 53.1-40.01. See Virginia Parole Board, Virginia Parole Board Policy Manual (July 1997); Virginia Parole Board, Virginia Parole Board Administrative Procedures Manual Nos. 1.218 (revised May 21, 1996) and 1.226 (effective Nov. 14, 1995).

established and administered by the Board of Corrections," which the majority contends renders the earned sentence credit program too speculative to tell the jury about, is similar to the inquiry that the Parole Board must conduct before it can discharge any inmate on geriatric release. Virginia Parole Board, Virginia Parole Board Administrative Procedures Manual No. 1.226 (effective Nov. 14, 1995) (Parole Board uses same criteria for determining prisoner's suitability for geriatric release as it does "for assessing offenders eligible for parole consideration").[7]

If "truth in sentencing" is a goal of our system of justice, it seems that, if a jury is told anything about the availability or unavailability of parole or geriatric release, it should also be instructed about earned sentence credits and any other matter that could affect the amount of time that a defendant may actually serve.[8] Otherwise, a jury will be

---

[7] Among those criteria are "[w]hether the individual's history, physical and mental condition and character, and the individual's conduct . . . reflect the probability that the individual will lead a law-abiding life . . .," as well as an evaluation of the individual's "[g]eneral [a]djustment" to the institutional experience, including the individual's behavior and relationships with the prison staff and other inmates. Virginia Parole Board, Virginia Parole Board Policy Manual 2-3 (July 1997). See also Code § 53.1-155(A).

[8] I do not mean to suggest that a jury should be told about the power of the trial court and this Court to set aside a

receiving a "half-truth," and the Commonwealth will be prejudiced because a jury could believe that a defendant will serve all of a sentence imposed when, in fact, that is not always what happens in a non-capital felony case.[9]

However, if a jury receives all relevant information so that neither a defendant nor the Commonwealth is prejudiced, I fear that juries may become confused, will speculate on the effect of any applicable sentence reduction methods available to the executive branch, and perhaps will resort to the use of a calculator in attempting to fashion an appropriate sentence. We have previously noted that "the average juror is aware that some type of further consideration will usually be given to the sentence imposed," Hinton, 219 Va. at 496, 247 S.E.2d at 706, but have warned against encouraging speculation by a jury. "[I]f it is thought necessary to tell the jury not to speculate about the information given, it is safer not to give the information at all." Jones, 194 Va. at 278, 72 S.E.2d at 696.

---

jury's sentence. See Frye v. Commonwealth, 231 Va. 370, 395-96, 345 S.E.2d 267, 284-85 (1986).

[9] Our prior cases have indicated a policy favoring a fully informed jury, Yarbrough, 258 Va. at 373, 519 S.E.2d at 616, Jones, 194 Va. at 278, 283, 72 S.E.2d at 696, 698 (majority, Spratley, J. concurring), although at least one of those cases has recognized that such a goal may be superseded by other concerns, Jones, 194 Va. at 279, 72 S.E.2d at 697.

I also believe that if a jury is advised about all the factors that might impact the amount of time that a defendant actually serves, the jury will, in essence, be considering factors outside its control, and in doing so, will not only be intruding upon the discretion afforded to the executive branch in administering sentences,[10] but also nullifying the legislative goal underlying earned sentence credits and other forms of sentence reduction. A jury "should not fix a defendant's punishment with the view of preventing the operation of laws that have been duly enacted for the handling of a prisoner after sentence in a way considered by the lawmakers to be in the best interests of the public and of the prisoner." Id. at 279, 72 S.E.2d at 696.

Furthermore, this Court has already partially addressed the question before us. In Peterson v. Commonwealth, 225 Va. 289, 302 S.E.2d 520, cert. denied, 464 U.S. 865 (1983), the jury asked whether it was possible "to give a life sentence without parole." Id. at 296, 302 S.E.2d at 525. In response, the trial court advised that jury that its responsibility was to impose such sentence as it deemed just and that it was not to concern itself with what may thereafter happen. Id. at 296-97, 302

---

[10] The doctrine of "separation of powers" prevents such an intrusion, as the executive and judicial branches are to be kept

24

S.E.2d at 525. The defendant in that case, who was charged with capital murder in the commission of armed robbery and had two previous convictions for armed robbery, did not object to the court's answer. However, he argued before this Court that Code § 53.1-151(B1), which became effective July 1, 1982, and made a person convicted of three separate offenses of armed robbery ineligible for parole, changed the rule addressed in Hinton. We did not consider the effect of that statutory amendment but reaffirmed "the principle . . . that it is improper to inform the jury as to the possibility of parole." Peterson, at 297, 302 S.E.2d at 525. We further stated that "it would have been improper for the trial court sua sponte to have offered a jury instruction based upon the 1982 amendment, even if, as [the defendant] now contends, the amendment applied to him" and rendered him parole ineligible. Id.

Thus, I believe that the rule enunciated in Coward and consistently followed until today in non-capital felony cases remains viable and should not be discarded. The rule preserves our system of government premised on the separation of powers between the branches of government and also takes into account practical considerations about how much information a jury

---

as separate and apart as possible. Winchester & Strasburg R.R. Co. v. Commonwealth, 106 Va. 264, 270, 55 S.E. 692, 694 (1906).

should receive regarding sentencing while still maintaining fairness to both the defendant and the Commonwealth.

For these reasons, I dissent and would affirm the judgment of the Court of Appeals.