COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Frank and Clements
Argued at Chesapeake, Virginia


LERICO KEARNEY

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1078-00-1          JUDGE RICHARD S. BRAY
                                    JANUARY 29, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
                     Westbrook J. Parker, Judge

            Joseph R. Winston, Special Appellate Counsel
            (Public Defender Commission, on briefs), for
            appellant.

            John H. McLees, Jr., Assistant Attorney
            General (Randolph A. Beales, Attorney
            General, on brief), for appellee.


     Lerico Kearney (defendant) was convicted by a jury for

first-degree murder and related use of a firearm, violations of

Code §§ 18.2-32 and -53.1, respectively.  On appeal, defendant

contends that the trial court erroneously (1) denied his motion

for a mistrial resulting from the prosecutor's reference, during

closing argument, to defendant's failure to testify, and (2)

refused to instruct the jury on the abolition of parole.  For the

following reasons, we reverse the trial court.[1]

---

     [*] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

     [1] Because we reverse on the first issue, we need not address
the remaining assignment of error, which is clearly controlled
by Fishback v. Commonwealth, 260 Va. 104, 532 S.E.2d 629 (2000),
and will govern the proceedings on remand.

In accord with well established principles, "we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

I.

On November 21, 1997, at approximately 9:00 p.m., David Eugene Artis and his sister, Yvonne Giles, were murdered in Artis' apartment, located on Franklin Street in the City of Suffolk. According to the medical examiner, Giles died from a "[g]unshot wound to the head" and Artis from "[g]unshot wounds to [the] chest and head." Giles was killed by a .45 caliber weapon, and compatible shell casings were found at the scene. Defendant was indicted for both murders and attendant firearm offenses, but convicted only of the Giles murder and related crimes.

Testifying for the Commonwealth, Sabrina Norfleet, a woman "dating" Artis at the time of the murder, acknowledged he "didn't work" and "ma[d]e a living gambling" and "sell[ing] drugs." She specifically recalled a "dice" game between defendant and Artis in November 1997, when Artis won "about five grand" from defendant. In the early evening of November 21, 1997, the day of the murders, Norfleet had seen defendant and Artis together in an automobile,

"head[ing] . . . towards Franklin Street," "where [Artis] was living."

Travis Chalk had been with defendant the day prior to the murders and observed a "black .45" firearm in his possession. The following morning, Chalk was present when Artis arrived at defendant's residence and overheard defendant declare, as Artis approached, "if [he] don't have a G or better, I'm'a [sic] kill him. 'Cause I'm tired of him winning my money and coming with no money." Defendant and Artis then began "shooting dice," and, after "about an . . . hour," agreed to "get back up later and finish shooting dice." "[R]ight after it got dark," Chalk again saw Artis, alone and driving "[a] little white Chevrolet," followed by defendant and Quinton Parrish, also known as "QP," in a "white Mitsubishi Gallant," "heading toward Franklin Street." When Chalk next encountered defendant, a "[f]ew days" after the offenses, he instructed Chalk "to tell [police] . . . [h]e didn't know him."

Casey Davis also observed defendant in possession of "a .45" caliber handgun on November 20, 1997, and "riding" with Parrish in a "white Mitsubishi Gallant" the following evening. When Parrish was later seen by Veronica Davis, "walking" "[o]n Franklin Street," "he started running." Veronica Davis then observed another man "getting in" "a white looking car . . . either white or gray," parked opposite Artis' apartment.

Tony Boothe, a convicted "drug dealer" and federal prisoner, recounted a visit with defendant in December 1997, "to collect some money [defendant] owed [Boothe] for . . . drugs." Defendant "didn't have all the money" and explained to Boothe that "he lost the money gambling" and "had to kill two people to get the money back." Detailing the murders, defendant confessed to Boothe, "he went . . . [with] PC . . . [t]o collect - to get the money. . . . [H]e put the gun to the people heads [sic]. . . . [T]he other guy searched the house, searched the people, and . . . they killed – he killed the people after that." Boothe recalled that other people were present elsewhere in "the house" during this conversation with defendant, and the door was "pretty much open." He confirmed defendant "was arrested for this offense" "about a week" following the conversation.

Boothe further testified that, in April 1999, he had a second encounter with defendant, while the two were alone on a basketball court, that touched upon the subject offenses. When Boothe inquired of defendant, "why did he kill the people to get the money," defendant replied, "he had to do what he had to do to get his money back."

Defendant neither testified nor offered other evidence to controvert Boothe's testimony, although he challenged Boothe's credibility during cross-examination.

During closing argument to the jury, the prosecutor specifically addressed "the testimony of Tony Boothe," commenting:

> There were a lot of questions asked Tony Boothe about what he's getting. What his criminal record is. What he did for a living. Ten lawyers-a lawyer can come in here and say what he could or could not get. But has there been any evidence, any evidence in this case, that contradicts what he said—

Defense counsel immediately moved the court to declare a mistrial, contending that, because only defendant could have contradicted Boothe, the Commonwealth had improperly referenced his failure to testify. The trial judge denied the motion, but admonished the prosecutor not to "dwell on it," noting he was "get[ting] awfully close to saying something about the defendant having to testify."

The jury was subsequently instructed, retired to consider a verdict, and found defendant guilty of the first-degree murder of Giles and the related firearm offense, resulting in the instant appeal.

## II.

Defendant maintains the prosecutor's closing argument, which emphasized the absence of "any evidence . . . that contradicts what [Boothe] said," was an improper comment on his failure to testify, thereby necessitating a mistrial. We agree.

"As a general rule, any comment that the Commonwealth's Attorney made referring to the defendant's election not to testify is a violation of his rights against self-incrimination

as guaranteed by the Fifth Amendment."  Johnson v. Commonwealth, 236 Va. 48, 50, 373 S.E.2d 134, 136 (1988) (citing Griffin v. California, 380 U.S. 609, 615 (1965)).

> In determining whether a remark falls within the boundary of the prohibition that a prosecutor shall not make an adverse comment before the jury on a defendant's failure to testify, the test is whether, in the circumstances of the particular case, "the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify."

Hines v. Commonwealth, 217 Va. 905, 907, 234 S.E.2d 262, 263 (1977) (quoting Knowles v. United States, 224 F.2d 168, 170 (10th Cir. 1955)) (emphasis added).

Here, the prosecutor's argument to the jury expressly referenced conversations between defendant and Boothe during which defendant confessed to the offenses at issue.[2]  Although the evidence suggests others may have been within earshot of defendant's first discussion with Boothe, the record clearly reflects that the conversation at the basketball court was exclusive to the two men.  Thus, the prosecutor's argument, considered in the context of the evidence before the jury, referenced the inescapable conclusion that only defendant could "contradict" Boothe's testimony,[3] thereby "naturally and

_____

[2] Defendant raises the identical argument with respect to numerous additional comments of the prosecutor.  However, defendant objected only to the Boothe remarks and, therefore, is procedurally barred from presenting the remaining issues on appeal.  Rule 5A:18; see Jacques v. Commonwealth, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991).

[3] At the inception of the proceedings, the court admonished the jurors to "judge [the] facts . . . judge what actually

necessarily" resulting in the jury "tak[ing] it to be a comment on the failure of the accused to testify."  Hines, 217 Va. at 907, 234 S.E.2d at 263.[4]

Accordingly, the trial court erroneously denied defendant's motion for a mistrial, and we reverse the convictions and remand the prosecution to the trial court for such further proceedings as the Commonwealth deems appropriate.

Reversed and remanded.

---

happened in the case," "to make your decision based on what you see and hear in the courtroom and not on something that's outside the courtroom."  Thus, the jury was properly precluded from speculating upon other evidence that may have "contradicted" Boothe.

[4] The Commonwealth concedes, on brief, that the prosecutor's remarks would have been improper, if "the contradiction referred to could only have come from the defendant himself," a view shared by a majority of jurisdictions.  See 14 A.L.R. 3d 723, 730 (1967), and a circumstance clearly distinguishable from a generalized reference to the "evidence of witnesses who had testified."  Washington v. Commonwealth, 216 Va. 185, 195, 217 S.E.2d 815, 824 (1975).