COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Clements and Senior Judge Bray*
Argued at Chesapeake, Virginia


JAMES W. WATERS, JR.
                                           OPINION BY
v.    Record No. 2053-01-1      JUDGE JEAN HARRISON CLEMENTS
                                        SEPTEMBER 24, 2002
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    Thomas S. Shadrick, Judge

          David P. Bogardus (L. Dickerson Bragg;
          Duncan R. St. Clair, III & Associates, P.C.,
          on brief), for appellant.

          John H. McLees, Senior Assistant Attorney
          General (Randolph A. Beales, Attorney
          General, on brief), for appellee.


     James W. Waters, Jr., was convicted in a jury trial of first

degree murder, in violation of Code § 18.2-32, conspiracy to

commit malicious wounding, in violation of Code § 18.2-22,

attempted malicious wounding, in violation of Code § 18.2-51, and

two counts of use of a firearm in the commission of a felony, in

violation of Code § 18.2-53.1.  Appealing those convictions,

Waters contends the trial court erred (1) in refusing to grant his

proposed jury instruction on the defense of accidental killing and

(2) in failing to instruct the jury that parole had been abolished

in Virginia.  Finding no error, we affirm Waters' convictions.

_____

        * Judge Bray participated in the hearing and decision of
this case prior to the effective date of his retirement on
September 1, 2002 and thereafter by his designation as a senior
judge pursuant to Code § 17.1-401.

I.  BACKGROUND

The evidence in this case involved two related shooting incidents that took place in the City of Virginia Beach on the night of January 25, 1997.  The first incident involved a "drive-by" shooting in the Magic Hollow subdivision, during which Waters, who was driving around with two other people, fired his handgun at a man who was sitting at a street corner.  Based on that incident, Waters was charged with and convicted of conspiracy to commit malicious wounding, attempted malicious wounding, and use of a firearm in the commission of attempted malicious wounding.

The second incident involved the fatal shooting of Timothy Wheaton in the Landstown Meadows subdivision.  Following the first shooting incident, Waters and his cohorts drove to a different area of the city to look for Ian Zinn.  Apparently, Waters suspected that Zinn had been involved two days earlier in an altercation with a friend of Waters.  Waters and his companions first drove to a house where Waters believed Zinn's car was parked.  When no one answered his knock on the door of the house, Waters used the butt of his pistol to smash the windshield of a car parked outside the house.

A short while later, Waters and his companions were driving through the subdivision when they observed three young men walking up the street.  Waters told the driver to pull up to the young men.  Waters, who was the passenger in the front seat, asked them

-

if they knew Zinn.  When they said they did not, Waters asked one of the young men, Wheaton, if he was Zinn.  When Wheaton responded that he was not Zinn, Waters pulled out his handgun and, pointing it at Wheaton, said, "If you're fucking lying to me, I'll kill you."  Two seconds later, Waters abruptly fired the gun, hitting Wheaton in the chest from three feet away.  The shot was fatal.

Immediately following the shooting, one of Wheaton's companions heard laughter coming from inside the car occupied by Waters and his cohorts.  As Waters and his cohorts drove away, one of Waters' cohorts asked him why he had shot Wheaton.  Waters replied that he knew the person he had shot was Zinn.  Waters later told other friends that he had done the shooting and bragged about having committed a shooting that was "all over the news."

Waters testified in his own defense at trial.  He claimed that his intention in pulling the gun on Wheaton and his companions was only to scare them.  He said he pointed the gun off to the side, rather than directly at the young men.  He "was lowering the pistol at the time," he testified, when he "just touched the trigger and it went off, and [Wheaton] was right in the way."  "I didn't mean to shoot him or nothing," Waters added. "It was pure accident, because there shouldn't have been no shooting at all."

The Commonwealth offered two finding instructions pertaining to the killing, one on first degree murder alone and the other on first degree murder and lesser included offenses.  The trial court

-

judge declined the first instruction, stating that there was "more than a scintilla of evidence to support [the] lesser included offenses [of] . . . second degree murder[] and killing during an unlawful act not a felony."  Specifically, the trial judge noted:

> [I]f there is evidence to the effect that the defendant . . . says that he just intended to scare this person by threatening him with a gun — that would technically be an assault — and he was killed when the gun went off during this threat; and so there is some evidence to support that theory.

Consequently, the trial judge granted the Commonwealth's second finding instruction, which read:

### Instruction No. 15

> The defendant is charged with the crime of first degree murder.  The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> 1.  That the defendant killed Timothy Wheaton; and
>
> 2.  That the killing was malicious; and
>
> 3.  That the killing was willful, deliberate and premeditated.
>
> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the offense as charged, then you shall find the defendant guilty of first degree murder.
>
> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the first two elements of the offense as charged but you do not find beyond a reasonable doubt that the killing was willful, deliberate and premeditated, then you shall find the defendant guilty of second degree murder.

-

If you find that the Commonwealth has failed to prove beyond a reasonable doubt that the killing was malicious but that the Commonwealth has proved beyond a reasonable doubt that the defendant killed Timothy Wheaton and further:

1.  That the killing was during the commission of an unlawful act, not a felony, then you shall find the defendant guilty of voluntary manslaughter.

If you find that the Commonwealth has failed to prove beyond a reasonable doubt any of the above offenses, then you shall find the defendant not guilty.

Waters did not object to this instruction.[1]

The trial court also gave the following instructions:

Instruction No. 18

In order for the killing to amount to murder in the second degree, although it is not necessary for the Commonwealth to prove willfulness, deliberation and premeditation, it is incumbent upon the Commonwealth to prove that the defendant acted with malice, and unless you believe from the evidence beyond a reasonable doubt that the defendant did act with malice, you cannot find the defendant guilty of second degree murder.

Instruction No. 19

Malice is that state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification, at a time when the mind of

---

[1] The Commonwealth acknowledges that the granted instruction incorrectly identified the latter lesser included offense as voluntary, rather than involuntary, manslaughter.  Waters argues that "this error is, on its face, significant enough to warrant a resentencing."  However, because Waters did not raise this issue at trial, we will not consider it for the first time here. See Rule 5A:18.

-

the actor is under the control of reason. Malice may result from any unlawful or unjustifiable motive including anger, hatred or revenge. Malice may be inferred from any deliberate willful and cruel act against another, however sudden.

Waters proffered a jury instruction on the defense of accidental killing, which read:

ACCIDENTAL KILLING

Instruction No. _____

Where the defense is that the killing was an accident, the defendant is not required to prove this fact. The burden is on the Commonwealth to prove beyond a reasonable doubt that the killing was not accidental. If after considering all the evidence you have a reasonable doubt whether the killing was accidental or intentional, then you shall find the defendant not guilty.

The trial court judge refused this instruction, stating that it did not "fit the facts in this case." "It's either a killing during an unlawful act or a higher offense," the judge added.

In the penalty phase of the trial, Waters did not request that the jury be advised that parole had been abolished in Virginia. Nor did the jury inquire about the possibility of parole.

II. INSTRUCTION ON ACCIDENTAL KILLING

On appeal, Waters contends the trial court erred in refusing to grant his proposed jury instruction on accidental killing, which, he maintains, was warranted by the evidence. Accordingly, he argues, his convictions should be reversed.

-

In reviewing the trial court's rejection of the proffered jury instruction on the defense of accidental killing, we view the evidence in the light most favorable to Waters. See Boone v. Commonwealth, 14 Va. App. 130, 131, 415 S.E.2d 250, 251 (1992) (holding that, "[a]lthough the Commonwealth prevailed at trial, the appropriate standard of review requires that we view the evidence with respect to the refused instruction in the light most favorable to the defendant").

At the outset, we note that Waters' contention regarding the refusal of his proposed jury instruction on the defense of accidental killing relates only to his convictions of first degree murder and use of a firearm in the commission of murder. Thus, if upheld, that contention would not affect his convictions of conspiracy to commit malicious wounding, attempted malicious wounding, and use of a firearm in the commission of attempted malicious wounding.

Moreover, our review of the record convinces us that Waters' contention is without merit. As the Commonwealth acknowledges, Waters' proposed jury instruction on accidental killing would have correctly informed the jury that it was the Commonwealth's burden to prove the killing was not an accident, rather than Waters' burden to prove the killing was an accident. However, as the Commonwealth also points out, that aspect of Waters' proposed instruction was adequately presented in other jury instructions given by the trial court. In giving "Instruction No. 15," the

-

court informed the jury that, to prove first degree murder, the Commonwealth had to prove beyond a reasonable doubt that "the killing was malicious; and . . . [t]hat the killing was willful, deliberate and premeditated." In giving the same instruction, the trial court also told the jury that, to prove second degree murder, the Commonwealth had to prove that "the killing was malicious." In giving "Instruction No. 18," the trial court emphasized that, to prove second degree murder, the Commonwealth had "to prove that the defendant acted with malice." "Malice," the court told the jury in "Instruction No. 19," "is that state of mind which results in the <u>intentional</u> doing of a wrongful act to another without legal excuse or justification." (Emphasis added.) A court does not err in refusing a proffered jury instruction if the principles of law addressed in that instruction are adequately presented in other instructions. <u>Graham v. Commonwealth</u>, 31 Va. App. 662, 674, 525 S.E.2d 567, 573 (2000).

In addition, to the extent the proffered instruction would have told the jury that, "[i]f after considering all the evidence you have a reasonable doubt whether the killing was accidental or intentional, then you shall find the defendant not guilty," the instruction was, as the trial court ruled, inapposite under the facts of this case. The evidence upon which Waters relies to support his proffered instruction comes from his own testimony. He is bound by that testimony on appeal. <u>See</u> <u>Delawder v. Commonwealth</u>, 214 Va. 55, 57, 196 S.E.2d 913, 915 (1973) (holding

-

that "the defendant is bound by what he said on the witness stand"). Waters testified that the shooting occurred accidentally in an incident where he deliberately brandished a handgun in the presence of the victim and two others for the purpose of scaring them. Such an action by Waters was, at the very least, a misdemeanor assault, as the trial court recognized, see Merritt v. Commonwealth, 164 Va. 653, 658-59, 180 S.E. 395, 397-98 (1935); see also Code § 18.2-56.1, or a misdemeanor of reckless handling of a firearm, see Code § 18.2-56.1. Thus, the killing was, as the trial court reasoned, "either a killing during an unlawful act or a higher offense."

Accordingly, even if the killing had been an accident, as Waters testified, it is clear from Waters' own testimony that the killing occurred in the course of his commission of a misdemeanor. An accidental killing committed in the course of an unlawful, nonfelonious act constitutes involuntary manslaughter. See, e.g., Dowden v. Commonwealth, 260 Va. 459, 470, 536 S.E.2d 437, 443 (2000). Thus, Waters' proffered jury instruction, which required an outright acquittal if the jury had a reasonable doubt as to whether the killing was intentional, was improper under the facts of this case.

We hold, therefore, that the trial court did not err in refusing Waters' proffered jury instruction.

-

### III.  INSTRUCTION ON PAROLE

Waters also contends on appeal that the trial court erred in not advising the jury that parole had been abolished in Virginia. The trial court, he argues, had an affirmative duty under the Supreme Court's ruling in Fishback v. Commonwealth, 260 Va. 104, 532 S.E.2d 629 (2000), to instruct the jury on the abolition of parole in this case.

In Fishback, the Supreme Court held that "juries shall be instructed on the abolition of parole for non-capital felony offenses committed on or after January 1, 1995, and that this new rule of criminal procedure is limited to cases not yet final on June 9, 2000."[2]  Id. at 115-16, 532 S.E.2d at 634.  Unlike the circumstances of this case, however, in Fishback, the defendant proffered an instruction on the abolition of parole in Virginia, which the trial court refused, and the jury asked during its deliberations on sentencing about the possibility of parole.  Id. at 109, 532 S.E.2d at 630.  In response to the jury's inquiry, the trial court instructed the jury members that they were not to concern themselves with "what may happen afterwards."  Id. at 110, 532 S.E.2d at 631.  Fishback did object to the court's instruction and did not renew his request for an instruction regarding the abolition of parole.  Id.

---

[2] Although Waters' trial occurred in 1997, Waters' direct appeal had not been completed prior to the Supreme Court's decision in Fishback.  The Commonwealth, therefore, does not contest Waters' entitlement to raise this issue on appeal.

Thus, as the Supreme Court noted in Jerman v. Commonwealth, 263 Va. 88, 92-93, 556 S.E.2d 754, 757 (2002),

> the circuit court in Fishback had the opportunity to consider during trial whether to instruct the jury on the recent statutory changes concerning parole. Although the instructions that the defendant proffered did not accurately reflect the statutory changes, we nevertheless concluded that the circuit court was required to correct the instructions and give them in their accurate form.

The Supreme Court further explained in Jerman that its decision in Fishback was based on the established rule that

> "'the trial court is not required to amend or correct an erroneous instruction, but . . . when the principle of law is materially vital to a defendant in a criminal case, it is reversible error for the trial court to refuse a defective instruction instead of correcting it and giving it in the proper form.'"

Id. at 93, 556 S.E.2d at 757 (quoting Fishback, 260 Va. at 117, 532 S.E.2d at 635 (quoting Whaley v. Commonwealth, 214 Va. 353, 355-56, 200 S.E.2d 556, 558 (1973))). Indeed, the Supreme Court stated in Fishback that, under the new rule established therein, "the task of the trial courts will require only that instructions with regard to the abolition of parole be tailored to the facts of a particular case." 260 Va. at 116, 532 S.E.2d at 634 (emphasis added). "In contrast," the Supreme Court noted in Jerman, "a circuit court ordinarily does not have the affirmative duty to give a jury instruction on a particular legal principle when a criminal defendant fails to request that the jury be instructed on

-

that principle." 263 Va. at 93, 556 S.E.2d at 757. "We have," the Supreme Court added, "regularly applied this rule in criminal cases." Id. Citing Rule 5:25, the Court also noted that it has "repeatedly . . . refused to consider challenges to jury instructions for the first time on appeal." Id. at 94, 556 S.E.2d at 757.

In Jerman, the defendant did not request a jury instruction on the abolition of parole or object to the trial court's instruction, in response to the jury's inquiry during deliberations about the possibility of parole, that the members of the jury should not concern themselves "with what comes afterwards." Id. at 90, 556 S.E.2d at 755. The Supreme Court held that, because the defendant failed to timely object to the trial court's instruction, his challenge to the lack of a jury instruction on the abolition of parole was procedurally barred under Rule 5:25. Id. at 94, 556 S.E.2d at 757.

We find that, while Jerman and the present case are factually distinct in that the jury in the instant case did not inquire as to the possibility of parole and thus received no instruction thereon, the principles espoused in Jerman, as set forth above, control the resolution of the case before us. Rule 5:25's counterpart in this Court is Rule 5A:18, which provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good

-

cause shown or to enable the Court of Appeals to attain the ends of justice."  "The purpose of the rule is to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals."  Andrews v. Commonwealth, 37 Va. App. 479, 493, 559 S.E.2d 401, 408 (2002). Consequently, we "will not consider an argument on appeal which was not presented to the trial court."  Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).

Here, it is clear that the trial court had no opportunity to consider during trial the issue of whether it was proper to instruct the jury on the abolition of parole in Virginia.  Be it for tactical purposes or other reasons, Waters did not request an instruction on the abolition of parole.  See Manetta v. Commonwealth, 231 Va. 123, 127-28 n.2, 340 S.E.2d 828, 830 n.2 (1986) (noting that, although defendant was entitled to an instruction, the trial judge was not required to give it sua sponte as defendant may not have sought it for sound tactical reasons).  Likewise, no evidence or argument placed the issue of parole before the jury, and the jury did not inquire about the possibility of parole or the effects of parole on any sentence that it might impose or otherwise evidence a need for instruction on parole in fulfilling its sentencing responsibilities. Furthermore, the record reveals that, during the sentencing phase of the trial, the trial court instructed the jury, without

-

objection by Waters, solely on the statutory parameters of punishment for each offense.  It offered no instruction on the issue of parole.

We hold, therefore, that, because the trial court never had the opportunity to consider whether the jury should be instructed on the abolition of parole, we are barred by Rule 5A:18 from considering the issue of whether the trial court erred in not instructing the jury on the abolition of parole.  Moreover, our review of the record in this case reveals no reason to invoke the "good cause" or "ends of justice" exceptions to Rule 5A:18.

Accordingly, we affirm Waters' convictions.

<u>Affirmed.</u>