COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Kelsey and Alston
Argued at Chesapeake, Virginia


MICHAEL RYAN BRUTON

v.      Record No. 1636-12-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROSSIE D. ALSTON, JR.
APRIL 1, 2014


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

Afshin Farashahi (Afshin Farashahi, P.C., on brief), for appellant.

Elizabeth C. Kiernan, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.[1]


On appeal from his convictions of two counts of credit card fraud, Michael Ryan Bruton

(appellant) contends that the trial court erred by failing to grant his motion for a mistrial.

Appellant asserts that a mistrial was warranted because the trial court improperly informed the

jury, during the sentencing phase, that appellant would receive a credit against his sentence for

the time he had been incarcerated while awaiting trial. Finding no error, we affirm the trial

court.

BACKGROUND

Appellant was tried by a jury on indictments charging one count of credit card theft, in

violation of Code § 18.2-192(1)(a), two counts of credit card fraud, in violation of Code

§ 18.2-195(1)(a), and two counts of credit card forgery, in violation of Code § 18.2-193. During

a two-day bifurcated trial, the Commonwealth's evidence during the guilt-determination phase

--------

[1] The Honorable Mark Herring succeeded Attorney General Kenneth T. Cuccinelli, II, on
January 13, 2014.

proved beyond a reasonable doubt that on May 8, 2011, appellant used a credit card number belonging to the victim at two retail stores to purchase goods valued at approximately $1,000. The victim did not know appellant and did not authorize appellant to use her credit card information. Upon appellant's own testimony, the jury was also informed that appellant was arrested on July 13, 2011, and that he remained incarcerated while awaiting his trial on July 11 – 12, 2012. Based on the evidence presented, the jury convicted appellant of both counts of credit card fraud and acquitted appellant of the remaining charges.

After the jury returned its verdict, the sentencing phase of the trial commenced. The trial court instructed the jury, after which the following exchange occurred:

> [Juror]: He's already been in jail for a year. Does this add on to what he's already done, or is this – or is this from here on?
>
> [Trial Court]: He gets credit for any time he's been in custody.
>
> [Juror]: So then if we said a year, then that means he could walk out tomorrow?

Counsel for appellant objected. Without objection, the trial court held an off-the-record sidebar-conference with counsel and then further admonished the jury to "[t]ake it at what I said" and "base everything on the instructions that you have." Thereafter, appellant's attorney made a motion for a mistrial, arguing that the trial court improperly instructed the jury regarding the question of appellant receiving credit for time served. The trial court denied the motion for a mistrial.[2] The jury subsequently fixed appellant's sentence at two years' imprisonment for each of the two convictions of credit card fraud. This appeal followed.

---

[2] Because we find no error in the trial court's instruction to the jury, we do not address appellant's request for a mistrial. Rather, we simply note that the remedy for an error occurring during the penalty phase of a bifurcated trial is typically to remand for a new sentencing event. Hills v. Commonwealth, 262 Va. 807, 811, 553 S.E.2d 722, 724 (2001).

ANALYSIS

Relying on the statement in <u>Coward v. Commonwealth</u>, 164 Va. 639, 646, 178 S.E. 797, 800 (1935), that a jury should "impose such sentence as seems just" and not concern itself with what may afterwards happen, appellant contends that the trial court erred by informing the jury that appellant would receive a credit for the time he was incarcerated while awaiting trial.

The <u>Coward</u> rule, though longstanding, is not without exception. Indeed, in <u>Fishback v. Commonwealth</u>, 260 Va. 104, 532 S.E.2d 629 (2000), the Supreme Court reconsidered the policy underlying the <u>Coward</u> rule in light of statutory enactments that restricted the executive branch's discretion to modify the sentences imposed on defendants.

The <u>Fishback</u> Court began its reconsideration with the acknowledgement that "'truth in sentencing' is a goal to be desired in the judicial process." <u>Id.</u> at 113, 532 S.E.2d at 632. To that end, the Court noted that "[a] jury should not be required to perform [the] critical and difficult responsibility" of fixing a defendant's specific term of confinement "without the benefit of all significant and appropriate information that would avoid the necessity that it speculate or act upon misconceptions concerning the effect of its decision." <u>Id.</u> at 113, 532 S.E.2d at 633. With those principles in mind, the Court addressed whether a defendant convicted of a non-capital-offense felony was entitled to a jury instruction stating that parole had been abolished in Virginia. <u>Id.</u> at 114, 532 S.E.2d at 633. The Court held that such an instruction was appropriate, particularly in view of the enactment of Code § 53.1-165.1, which abolished parole for felony offenses committed on or after January 1, 1995. <u>Id.</u> According to the Court, because Code § 53.1-165.1 applied to the offenses of which the defendant was found guilty, there remained no room for the jury to speculate "as to what might occur" during the administration of the defendant's sentence, at least concerning the issue of parole. <u>Id.</u> Critical to the Court's determination in <u>Fishback</u> was that with the enactment of Code § 53.1-165.1, the executive

branch no longer possessed the discretion to grant or deny parole; accordingly, adherence to the Coward rule was no longer necessary. Id. Similarly, the Court concluded that, "where applicable[,] juries should also be instructed on the possibility of geriatric release pursuant to [Code § 53.1-40.01]," as it was in the nature of a parole statute. Id. at 115-16, 532 S.E.2d at 634. Like Code § 53.1-165.1, the geriatric release statute was clear, and as to those to whom it applied, not subject to speculation. Id. at 115, 532 S.E.2d at 634.

However, the Court also addressed earned sentencing credits that a prisoner may obtain under Code §§ 53.1-202.2 – 202.4, which were earned based on the future conduct of the prisoner and "the subjective assessment of that conduct" by the executive branch. Id. Contrasting Code §§ 53.1-202.2 – 202.4 with the statutory enactments abolishing parole and providing for geriatric release, the Court "observed that a jury would be required to speculate in order to consider as part of its sentencing determination the possibility that a defendant could earn such future credits." Booker v. Commonwealth, 276 Va. 37, 42, 661 S.E.2d 461, 463 (2008) (citing Fishback, 260 Va. at 115, 532 S.E.2d at 634). Because "[t]he avoidance of such speculation underlies the Coward rule," the Court held that juries are not to be instructed about earned sentencing credits. Fishback, 260 Va. at 115, 532 S.E.2d at 634.

The Court distilled the separate Fishback holdings in Booker:

> These separate holdings in Fishback illustrate an important distinction between instructions that properly further the goal of "truth in sentencing" by removing the possibility that a jury will act upon misconceptions, and those instructions that have the improper effect of inviting the jury to speculate concerning the likelihood of future actions that may ultimately affect the length of a defendant's incarceration. See Bell v. Commonwealth, 264 Va. 172, 207-08, 563 S.E.2d 695, 718 (2002). A jury instruction regarding a defendant's ineligibility for parole is proper, because it serves to eliminate a common misconception that a defendant may only serve a small portion of a jury's sentence. See Fishback, 260 Va. at 113, 532 S.E.2d at 633. In contrast, a jury instruction that a defendant may be eligible for earned sentencing credits once incarcerated is improper, because the jury cannot employ this

information in its sentencing determination without resorting to speculation about the defendant's future behavior while incarcerated. See Bell, 264 Va. at 206-07, 563 S.E.2d at 718; Fishback, 260 Va. at 116, 532 S.E.2d at 634.

Booker, 276 Va. at 42, 661 S.E.2d at 463-64.

Having considered these principles and the parties' arguments, we find the trial court's instructions in this case akin to those in Fishback that "remov[ed] the possibility that [the] jury w[ould] act upon misconceptions." Id. at 42, 661 S.E.2d at 464. Appellant, without invitation from the Commonwealth, interjected into this case the issue of his incarceration while awaiting trial. We recognize that such information ordinarily is not presented to the jury. However, during his own defense, appellant testified that he was arrested and incarcerated on July 13, 2011, and that he remained incarcerated while awaiting his trial on July 11, 2012.

While deliberating during the sentencing stage, the jury expressed confusion about what effect, if any, appellant's incarceration while awaiting trial would have on his sentence. The trial court responded, correctly in our view, that appellant would receive a credit for time he had been held in custody.

As was the case in Fishback, the statutory provision at issue here is clear. Code § 53.1-187 states, in relevant part, "[a]ny person who is sentenced to a term of confinement in a correctional facility *shall* have deducted from any such term all time actually spent by the person . . . in a state or local correctional facility awaiting trial . . . ." This statutory provision applies to appellant as a "person who is sentenced to a term of confinement." Id. Moreover, in view of appellant's own testimony regarding his arrest and incarceration prior to trial, the duration of appellant's pre-trial incarceration (i.e., the basis for his credit) is easily discernible. Fishback, 260 Va. at 115, 532 S.E.2d at 634 (noting that the appellant's "eligibility for geriatric release [wa]s essentially a mathematical calculation"). Thus, appellant's right to receive a credit for the time he served while awaiting trial is not speculative. Nor is it discretionary. See Durkin v.

Davis, 538 F.2d 1037, 1039-40 (4th Cir. 1976) ("The right of credit for jail time awaiting trial on a bailable offense and pending appeal is not a matter of legislative grace but is a right constitutionally mandated, available to state prisoners as well as federal prisoners."); see Code § 53.1-187 (stating that any defendant "sentenced to confinement . . . in whose case the final order entered by the court in which he was convicted fails to provide for the credit authorized by this section, shall nevertheless receive credit for the time so spent in a state correctional facility"). As was the case in Fishback, the trial court's instructions here did not implicate the policy considerations underlying the Coward rule. Accordingly, we only consider whether the jury in this case was in need of more particularized instruction on incarceration credits for time served. See Fishback, 260 Va. at 117, 532 S.E.2d at 635 ("'[I]t belongs to the [trial] court to instruct the jury as to the law, whenever they require instruction, or either of the parties request it to be given.'" (quoting Thornton v. Commonwealth, 65 Va. (24 Gratt.) 657, 662 (1874))).

We entrust juries with the significant task of "determin[ing] [the] specific term of confinement" that is appropriate "under all of the circumstances revealed by the evidence in [a given] case." Id. at 113, 532 S.E.2d at 633. In recognition of this "critical and difficult responsibility," a jury is to be given "the benefit of all significant and appropriate information that would avoid the necessity that it speculate or act upon misconceptions concerning the effect of its decision." Id. The trial court's decision to instruct the jury regarding appellant's right to a non-speculative statutory credit for time served awaiting trial complied with this imperative. If the trial court had responded as appellant suggests it should have - by instructing the jury only to impose such sentence as it deemed appropriate and not to consider what may occur afterward - the jury would have been without significant and appropriate information necessary to prevent potential misconceptions concerning the effect of its decision. The trial court's instruction

resolved any misconception without creating any attendant risk of speculation. Accordingly, we find no error in the trial court's instructions.

CONCLUSION

For these reasons, we find that the trial court did not err by instructing the jury that appellant would receive a credit for the time he was incarcerated while awaiting trial. Appellant's convictions are therefore affirmed.

<u>Affirmed.</u>