MACK RHOADES, ET AL., ETC.

V.

JOHN W. PAINTER

Record No. 840270

September 4, 1987

Present: All the Justices

*John C. Maginnis, III,* for appellants.

*Jack B. Russell (Michael L. Goodman; Browder, Russell, Morris & Butcher, P.C.,* on brief), for appellee.

POFF, J., delivered the opinion of the Court.

This is an appeal from a judgment confirming a jury verdict for the defendant in a wrongful-death action based upon an allegation of medical malpractice. The dispositive issue is whether the trial court erred by permitting the jury to apply a local rather than a statewide standard of medical care.

The amended motion for judgment, which invoked Code § 8.01-50, the wrongful-death statute, was filed by Mack Rhoades and Thomas Harris, administrators of the estate of Matthew Jacob Rhoades, deceased, against Dr. John Painter and others.[1] Matthew was born December 9, 1977 at Mary Washington Hospital in Fredericksburg. A notation on a card affixed to Matthew's hospital crib showed that nurses had detected a "tinge" of jaundice eight hours after birth. Similar notations were recorded at eight-hour intervals during the 48-hour period following birth. According to hospital routine, crib cards were not placed in the infant's medical chart (and, hence, were not seen by the attending pediatrician) until the third day after birth.

---

[1] The plaintiffs nonsuited claims against all the defendants except Dr. Painter.

Dr. Painter, who had designed the crib-side observation card, first examined Matthew on the second day of his life. He testified that he found no evidence of jaundice then or later, and a nurse's notation on the infant's discharge record dated December 12, 1977 stated: "Condition appears satisfactory." Matthew's mother testified that her son was markedly yellow or jaundiced when they left the hospital. Matthew died October 14, 1979. The autopsy report cited brain damage as a cause of death.

Dr. John Kathwinkel, an expert called as a witness by the plaintiffs, testified that "[j]aundice is yellowness of the skin as a result of high bilirubin level"; that "if the bilirubin level is allowed to get too high . . . it can stain brain cells and eventually kill the brain cells"; and that in its most severe state the resulting condition, known as "kernicterus", "is a condition with seizures and death in about half the patients in early infancy." Asked "what a reasonably prudent Virginia pediatrician would have done" under the circumstances reflected on the crib card, Dr. Kathwinkel replied that "it is basic standard of care that the bilirubin level would be drawn, if jaundice appears in the first twenty-four hours of life." Explaining the statewide standard, he said that the blood test was necessary "[s]o that phototherapy or exchange transfusion could be done if the bulk bilirubin got to too high a level." No such test was performed on Matthew.

Dr. Painter called three pediatricians as expert witnesses to prove the standard of medical care in the Fredericksburg area. Although Dr. Joseph Puglisse did not practice at Mary Washington Hospital, a community hospital, he was attached to the staff of another community hospital and that of a "teaching hospital", both located in Virginia. He testified that fewer laboratory tests are conducted at community hospitals than at teaching hospitals because the former do not have resident staffs. Dr. Seth C. Craig, III, and Dr. Raymond Jones, both of whom had practiced pediatrics for many years in Fredericksburg, agreed that a "tinge" of jaundice in a newborn baby is normal and that a bilirubin test is not customary unless subsequent examinations show a progression of the jaundice. All the defendant's expert witnesses were of opinion that Dr. Painter had not violated the local standard of care.

The trial court granted an instruction which told the jurors that they could apply a local standard of care if they found that "the defendant has proved by the greater weight of the evidence that the health care services and customary practices in the locality

where the treatment took place make a local standard of care more appropriate than a statewide standard". The jury returned a verdict in favor of Dr. Painter, and the trial court entered judgment on the verdict. We granted the plaintiffs an appeal to consider their contention that the trial court erred by permitting the jury to apply the local standard of care.

In Virginia, the standard of care in medical malpractice actions is governed by statute. Under Code § 8.01-581.20, the standard is "that degree of skill and diligence practiced by a reasonably prudent practitioner in the field of practice or specialty in this Commonwealth" unless either party proves "by a preponderance of the evidence that the health care services and health care facilities available in the locality and the customary practices in such locality or similar localities give rise to a standard of care which is more appropriate than a statewide standard."

This statute was in effect when Matthew died, and the plaintiffs agree that the instruction in issue fairly paraphrases the statute.[2] The plaintiffs' complaint is that the instruction permitted the jury to apply the local standard of care when, the plaintiffs say, the defendant had introduced no evidence to support a finding that the local standard was more appropriate than the statewide standard.

A review of the transcript shows that Dr. Painter confined his examination of Doctors Craig and Jones to questions concerning the standard of care prevailing in Fredericksburg. The witnesses testified that Dr. Painter had complied with the local standard in caring for Matthew. Having invoked the local standard, Dr. Painter incurred the statutory burden of proving that it was more appropriate as a measure of his duty than the statewide standard. No witness testified to such effect, and the defendant produced no evidence tending to show that Fredericksburg community hospitals had inadequate equipment, facilities, or personnel to perform the bilirubin test or that there was anything peculiar to the Fredericksburg area which would justify applying a standard of medical care lower than that applied in the state at large. Indeed, according to the defendant's own witnesses, the bilirubin test was readily available and frequently performed at Mary Washington Hospital at a cost of only $10.

---

[2] On brief, the defendant argues that former Code § 8.01-581.12:1, the statute in effect when the alleged malpractice occurred, was the controlling statute. This question is not raised by assignment of cross-error, and we will not notice it on appeal. Rule 5:18.

■ It is true, as the defendant points out, that Dr. Puglisse testified that fewer laboratory tests are conducted at community hospitals, such as Mary Washington Hospital, than at teaching hospitals. But proof of that fact, standing alone, fails to discharge the defendant's burden. The witness's testimony assumes that the standard of care at Mary Washington is the same as that prevailing at all community hospitals in Virginia. This suggests that Mary Washington's standard is more appropriate than that prevailing at the teaching hospitals located in Virginia. However, that does not satisfy the mandate of Code § 8.01-581.20 that a party who relies upon a local standard of care prove that such a standard is more appropriate than that "practiced by a reasonably prudent practitioner . . . in this Commonwealth". It is insufficient that the local standard may be more appropriate than that practiced by resident practitioners at the teaching hospitals located in this Commonwealth.

■ Absent the proof required by statute, we hold that the trial court erred by instructing the jury that it could apply the local standard of care.

■ Nevertheless, Dr. Painter argues that any such error was harmless because the jury's verdict could have been grounded upon a finding that "Dr. Painter did not violate even Dr. Kathwinkel's [statewide] standard since there was no jaundice present by Dr. Painter's examinations." Under the harmless error doctrine, the judgment of the court below will be affirmed whenever we can say that the error complained of could not have affected the result. *Lester* v. *Simpkins*, 117 Va. 55, 69, 83 S.E. 1062, 1067 (1915). The doctrine is never applied, however, when it appears that the jury has been misinstructed and, had it been properly instructed, that it might have returned a different verdict. *Dir'tor Gen'l* v. *Pence's Adm'x*, 135 Va. 329, 352, 116 S.E. 351, 358-59 (1923).

■ We cannot say as a matter of law that the erroneous instruction could not have affected the result in this case. The jury could have found that, because attending nurses had detected jaundice eight hours after Matthew's birth and at every eight-hour interval during the first two days of his life, Dr. Painter had observed or should have observed the condition when he first examined his patient on the second day of his life. The jury had heard evidence that, under such circumstances, the statewide standard of care required a bilirubin test while the local standard did

not. Notwithstanding the absence of evidence that the local standard was the more appropriate measure of the doctor's duty to his patient, the jury could have been led by the erroneous instruction to conclude that, because his expert witnesses had testified that Dr. Painter had complied with the local standard, he was not guilty of actionable negligence.

Consequently, we hold that the error was not harmless, and we will reverse the judgment and remand the case for a new trial.

*Reversed and remanded.*