COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Chaney, Frucci and Senior Judge Annunziata
Argued at Fairfax, Virginia


PETER ROQUE, ET AL.

                                                      MEMORANDUM OPINION* BY
v.          Record No. 1024-23-4                        JUDGE STEVEN C. FRUCCI
                                                          DECEMBER 17, 2024

KIMBERLY WINTERS


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Margaret P. Spencer, Judge Designate

John P. O'Herron (Peter S. Askin; *Thompson*McMullan, PC, on
briefs), for appellants.

Thomas K. Plofchan, Jr. (Jacqueline A. Kramer; Westlake Legal
Group, PLLC, on brief), for appellee.


Peter Roque, a detective for the Loudoun County Sheriff's Office, and Michael

Chapman, the Sheriff of Loudoun County, appeal a final order from the Circuit Court of

Loudoun County implementing a jury verdict of $5 million[1] for malicious prosecution and

punitive damages in favor of Kimberly Winters.

This appeal asks whether the circuit court erred by: (1) precluding Roque and Chapman

from introducing evidence on the issue of proximate cause; (2) excluding evidence from trial

related to Winters's termination of employment with Loudon County Public Schools ("LCPS");

(3) preventing Roque and Chapman from impeaching Winters based on her prior statements; (4)

permitting Winters's expert, Dr. Thomas Borzilleri, to offer his opinion at trial; (5) refusing

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The jury awarded Winters $4.65 million in compensatory damages and $350,000 in
punitive damages.

Roque and Chapman's jury instruction informing the jury of the elements of the offense charged; and (6) failing to reduce the jury's verdict in accordance with Code § 2.2-1839.

For the reasons stated below, we affirm the circuit court in regard to assignments of error three and five, which relate solely to liability. However, as we find the circuit court erred in excluding evidence related to Winters's termination of employment with LCPS as it relates to damages, we reverse and remand for a new trial limited to damages.

Accordingly, we affirm in part, reverse in part, and remand for a new trial limited to the issue of damages.[2]

## BACKGROUND

### I. Winters is charged with taking indecent liberties with a child by a person in a custodial or supervisory relationship.

On October 24, 2018, S.A. and his mother, Heidi Jarrah, went to the Loudoun County Sheriff's Office to report that S.A. had been engaging in a "sexual relationship" with Winters, who was a high school teacher for LCPS.[3] At that time, S.A. told Roque that their sexual relationship began in February or March of 2018. Jarrah confirmed the relationship and stated that she made S.A. report it. In response to this information, Roque consulted with his supervisor and decided that "there was no crime" because "[S.A.] turned 18 in November of 201[7]" and because "[S.A.] was not [Winters's] student when the relationship began." The next day, Winters was placed on administrative leave by LCPS.

Sometime after, Roque received information that the sexual relationship began in October 2017. Accordingly, Roque scheduled a second interview with S.A. On October 31, 2018, Roque

---

[2] "When a case is reversed and remanded, and no liability questions remain, the circuit court must conduct 'a new trial limited to the issue of damages.'" *Cromartie v. Billings*, 298 Va. 284, 308 (2020) (quoting *Bradner v. Mitchell*, 234 Va. 483, 491 (1987)).

[3] S.A. was a former student of Winters. He was enrolled in her English class during the 2016-2017 school year.

interviewed S.A. and S.A. confirmed that the sexual relationship began in October 2017. After the interview, Jarrah told Roque that "Winters had confessed" to her "during a phone conversation." Roque requested a written statement from Jarrah "on what she had previously stated." On November 8, 2018, Jarrah met Roque at the Sheriff's Office, reviewed her statement, and signed it. The statement recounted Jarrah's phone conversation with Winters regarding her relationship with S.A. and how it "exceeded a teacher-student relationship." Jarrah also told Roque that she had copies of text messages as evidence of S.A. and Winters's sexual relationship, though the copies were not shown to Roque.

The next day, Roque executed a warrant and arrested Winters for an alleged violation of Code § 18.2-370.01. The arrest warrant stated that, between October 2017 and November 2017, Winters:

> did unlawfully and feloniously in violation of Section 18.2-370.1, Code of Virginia: while being eighteen years of age or over and maintaining a custodial or supervisory relationship with S.A. [17 yr old male], a child under the age of 18 who was not the spouse of the accused and who was not emancipated, with lascivious intent, knowingly and intentionally propose an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus, or an act constituting an offense under § 18.2-361 to such child.

As the case was being investigated, Roque informed the Commonwealth that Jarrah did not have the text messages saved on her computer and "Jarrah claimed it was a bluff to try and scare Winters." Subsequently, the Commonwealth moved to dismiss the case without prejudice because there was "not sufficient evidence to corroborate the allegations." Ultimately, the charges were nolle prossed in February 2019. Winters's employment with LCPS was terminated

in November 2019 for "engag[ing] in an inappropriate social relationship with a student in violation" of a school board policy.[4]

## II. Winters sues Roque and Chapman for malicious prosecution.

In January 2020, Winters filed a complaint for malicious prosecution against Roque and Chapman.[5] In the complaint, she alleged that Roque had charged and arrested her in November 2018 without probable cause. Roque and Chapman denied liability and pled several affirmative defenses. Among the affirmative defenses, Roque and Chapman contended that "[Winters] was cognizant and aware of all the facts, circumstances and conditions existing and consented to, permitted, acquiesced, actively encouraged and/or voluntarily assumed the risk therefrom and attended thereto," and that "[Winters] failed to mitigate any damages allegedly sustained." Subsequently, Winters filed a motion *in limine*, asking the circuit court to strike the affirmative defenses, limit the evidence surrounding the investigation as to how or why Winters was terminated from LCPS, and prohibit evidence of any alleged sexual relationship between Winters and S.A. after he turned 18.

On August 22, 2022, the circuit court granted Winters's motion *in limine* and struck the affirmative defenses,[6] prohibited evidence of the reasons given in her termination letter from

---

[4] The judge did not permit the jury to hear the reason for termination.

[5] Chapman was the Loudoun County Sheriff and Winters's claim against him was solely under a theory of respondeat superior, that he had responsibility over the policies and procedures of the deputy sheriff officers under the employ of the Loudoun County Sheriff's Office, namely, Detective Roque.

[6] The circuit court found that at the time of filing, Roque and Chapman had not articulated any basis for the defenses. However, the circuit court stated that they had the right to "supplement the answer if additional information becomes available." Roque and Chapman never amended their answers to assert affirmative defenses. Then, before trial, Winters filed an "Emergency Motion To Enforce Court's Order Regarding Affirmative Defenses," requesting that the circuit court strike five proposed jury instructions. She argued that Roque and Chapman

LCPS, and excluded evidence "regarding [Winters's] alleged romantic relationship with [S.A.]." However, the circuit court ruled that if Winters "opens the door to testimony that is relevant only to damages, the [c]ourt will allow that testimony."

On February 6, 2023, a five-day jury trial commenced. During trial, Winters presented evidence of her employment with LCPS since 2010, that she made $75,000 a year, that she no longer had that job, that she "cannot get a job that is equivalent to what [she] was making as a teacher," that she "couldn't get a job [for a] very long time here," and that she recently got a job that pays $16 an hour.

Then, on cross-examination, Winters was asked if she "always made truthful representation[s] under oath related to sexual contact with [S.A.]." Winters responded "[y]es." The parties then engaged in a sidebar with the circuit court, where Roque and Chapman sought the introduction of evidence they argued went towards her credibility. One of the statements proffered was from a deposition in which Winters allegedly admitted to "hav[ing] sex with [S.A.]." The other two proffered statements were from an earlier affidavit and school board hearing transcript in which she allegedly denied having a sexual relationship with a student. The circuit court ruled that the proposed statements were "not relevant," "too prejudicial," and were an attempt to enter evidence that the circuit court had already ruled to be inadmissible.

Also during Winters's cross-examination, Roque and Chapman asked her why she was "no longer working as a teacher." Counsel for Winters objected, stating that the circuit court had

were attempting to include affirmative defenses in the jury instructions that had not been previously pled, including instructions on proximate cause, superseding cause, advice of counsel, actual guilt, and but-for causation. The circuit court granted Winters's motion and ruled that the jury instructions did in fact relate to affirmative defenses, and those affirmative defenses had not been pled. Roque and Chapman assign error to this ruling. We find that the issue of proximate cause does not relate to one of the four elements needed to prove liability for malicious prosecution, but instead is relevant to Winters's recoverable damages. We do not address this issue for the reasons discussed below.

already ruled on this issue at the August 22, 2022 motion *in limine* hearing. Roque and Chapman contended that Winters opened the door to evidence of her termination from LCPS by testifying to her previous employment with LCPS and her inability to get a job equivalent to her position as a teacher. The circuit court sustained Winters's objection and ruled that she "is not seeking damages based on anything that happened with Loudoun County Public Schools."

Then, Dr. Borzilleri, an economic consultant, was admitted as an expert in economics and testified to Winters's damages. Specifically, he calculated the difference in economic streams before and after Winters lost her job at LCPS by gathering Winters's paystubs and W-2s from her previous employment and the paystubs of her current employment and projected an overall difference in earnings across her expected lifespan. After Dr. Borzilleri testified, Roque and Chapman asked for his opinion to be excluded from jury consideration, contending that it was too speculative. The circuit court overruled their objection.

At the end of trial, the circuit court discussed the jury instructions with the parties and gave its reasons for rejecting some of the proposed instructions. Among the rejected jury instructions was Roque and Chapman's proposed instruction which contained Code § 18.2-370.1, listing the elements of the offense of indecent liberties with a child. The circuit court rejected the instruction because the jury would be informed that Roque had to have probable cause for the offense that was charged, and it would be "confusing if the jury were to go over each of the five elements" listed in Code § 18.2-370.1.

After deliberation, the jury returned a verdict in favor of Winters in the amount of $4.65 million in compensatory damages and $350,000 in punitive damages. On March 24, 2023, the circuit court entered an amended judgment order nunc pro tunc to March 6, 2023. The amended

- 6 -

judgment order directed judgment against Roque and Chapman in the amount of $1.5 million, and $3.5 million against immune defendants.[7]  This appeal follows.

ANALYSIS

I.  Liability for Malicious Prosecution

A.  *Impeachment of Winters*

Roque and Chapman argue that the circuit court erred in preventing them from questioning Winters about alleged prior statements regarding her relationship with S.A. during cross-examination at trial.  The circuit court ruled that the proposed statements were "not relevant," "too prejudicial," and were an attempt to enter evidence that the circuit court had already ruled on as inadmissible (evidence relating to any romantic relationship with S.A. once he was no longer a student).

A circuit court's decision to admit or exclude evidence is reviewable as an abuse of discretion.  *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021).  Furthermore, "[l]imitation of cross-examination is within the trial court's discretion."  *Castillo v. Commonwealth*, 70 Va. App. 394, 461 (2019) (quoting *Jackson v. Commonwealth*, 266 Va. 423, 438 (2003)).  Likewise, a circuit court has discretion in weighing the probative value of evidence versus its prejudicial effect.  *See Kenner*, 299 Va. at 424.  "In evaluating whether a [circuit] court abused its discretion, . . . 'we do not substitute our judgment for that of the [circuit] court.  Rather, we consider only whether the record fairly supports the [circuit] court's action.'"  *Carter v. Commonwealth*, 293 Va. 537, 543 (2017) (second alteration in original) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).  This Court will find an abuse of discretion only

---

[7] "To the extent that any such award exceeds the coverage available under such risk management plans, the sheriff and any deputy shall be considered immune defendants under subsection F of § 38.2-2206."  Code § 2.2-1839(B).

when "reasonable jurists could not differ." *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019) (quoting *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017)).

"A witness may not be cross-examined regarding any fact irrelevant to the issues on trial when that cross-examination is for the mere purpose of impeaching his credit by contradicting him." *Simpson v. Commonwealth*, 13 Va. App. 604, 606 (1992) (citing *Seilheimer v. Melville*, 224 Va. 323, 326 (1982)). "The test as to whether a matter is material or collateral, in the matter of impeachment of a witness, is whether or not the cross-examining party would be entitled to prove it in support of his case." *Williams v. Commonwealth*, 16 Va. App. 928, 935 (1993). "To prevail in an action for malicious prosecution, a plaintiff must prove that the prosecution was '(1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff.'" *Dill v. Kroger Ltd. P'ship I*, 300 Va. 99, 109 (2021) (quoting *Lewis v. Kei*, 281 Va. 715, 722 (2011)).

When Winters responded with "[y]es" after being asked if she "always made truthful representation[s] under oath related to sexual contact with [S.A.]," Roque and Chapman sought to use three statements they argued went towards her credibility.[8] They proffered that in a deposition for this case she admitted to having sexual relations with S.A. and that during an earlier affidavit and school board hearing transcript she denied having sexual relations with a

---

[8] Prior inconsistent statements are admitted to attack the credibility of a witness who has offered conflicting testimony at different times and "not as substantive evidence of its content." *Hall v. Commonwealth*, 233 Va. 369, 370 (1987). "The procedure for impeaching a witness using prior inconsistent statements is well-established." *Petrovics v. Commonwealth*, No. 0393-22-2, slip op. at 8, 2023 Va. App. LEXIS 298, at *11 (May 16, 2023) (citing Code § 19.2 268.1); *see* Va. R. Evid. 2:613. The first step is to "call the witness's attention to the circumstances of the occasion on which the alleged prior statement was made." *Petrovics*, slip op. at 8, 2023 Va. App. LEXIS 298, at *11 (citing *Waller v. Commonwealth*, 22 Va. App. 53, 58 (1996)). Noteworthy for the case at hand, Winters was not confronted with the alleged prior statements by Roque and Chapman (and therefore, did not deny having previously stated them during trial).

student. Even assuming that Roque and Chapman are correct in claiming the statements are inconsistent in nature, statements made by Winters regarding whether she had a sexual relationship with S.A. after he turned 18 are irrelevant to the actions taken by Roque and Chapman at the time Winters was arrested and how they relate to the elements of malicious prosecution.[9] As such, the circuit court did not abuse its discretion in preventing the use of the statements during cross examination.

B. *Proposed Jury Instruction*

Roque and Chapman also argue that the circuit court erred in refusing to grant their proffered jury instruction.[10] The jury instruction contained Code § 18.2-370.1, and, therefore,

---

[9] The circuit court concluded the statements were not inconsistent because S.A. was not a student at the time of the deposition.

[10] The proffered jury instruction was stated as follows:

> The plaintiff in this case was charged with violating Virginia Code § 18.2-370.1, taking indecent liberties with child by person in custodial or supervisory relationship. Virginia Code § 18.2-370.1 states:
>
> Any person 18 years of age or older who . . . maintains a custodial or supervisory relationship over a child under the age of 18 and is not legally married to such child and such child is not emancipated who, with lascivious intent, knowingly and intentionally
>
>> (i) proposes that any such child feel or fondle the sexual or genital parts of such person or that such person feel or handle the sexual or genital parts of the child;
>> or
>> (ii) proposes to such child the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus . . . ;
>> or
>> (iii) exposes his or her sexual or genital parts to such child;
>> or
>> (iv) proposes that any such child expose his or her sexual or genital parts to such person;

listed not only the elements of the crime that Roque arrested Winters for, but also included the other ways individuals can violate that code section.

"The trial court's 'broad discretion in giving or denying instructions requested' is reviewed for an abuse of discretion." *King v. Commonwealth*, 64 Va. App. 580, 586 (2015) (en banc) (quoting *Gaines v. Commonwealth*, 39 Va. App. 562, 568 (2003) (en banc)). "On appeal, this Court's 'sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Id.* at 586-87 (alteration in original) (quoting *Molina v. Commonwealth*, 272 Va. 666, 671 (2006)).

Assuming without deciding that the circuit court erred in refusing to give the proposed jury instruction, we hold that the error is harmless. "Any error that does not implicate the trial court's subject matter jurisdiction is subject to harmless-error analysis . . . ." *Spruill v. Garcia*, 298 Va. 120, 127 (2019). "Under the harmless error doctrine, the judgment of the court below will be affirmed whenever we can say that the error complained of could not have affected the result." *Rhoades v. Painter*, 234 Va. 20, 24 (1987). "The doctrine is never applied, however, when it appears that the jury has been misinstructed and, had it been properly instructed, that it might have returned a different verdict." *Id.*

---

or
(v) proposes to the child that the child engage in sexual intercourse, sodomy or fondling of sexual or genital parts with another person; . . .

. . . is guilty of a Class 6 felony.

Compelling any of the above acts by force is not required to violate Virginia Code § 18.2-370.1. Sexual intercourse with a person under the age of 18 years old in a custodial relationship, alone, is sufficient to be convicted of this crime.

(Alterations in original.)

- 10 -

"[W]hether probable cause is proven will depend upon whether the circumstances disclosed by the evidence were such as to justify an ordinarily prudent person in acting as [Roque] acted here." *F.B.C. Stores, Inc. v. Duncan*, 214 Va. 246, 251 (1973). "Unless the evidence leaves no room for reasonable men to disagree, that will be a question of fact properly within the province of the jury." *Id.* Here, the jury needed to determine whether Roque had probable cause to arrest Winters based on the allegations he listed in the arrest warrant. The jury was given several instructions on probable cause, and the warrant of arrest was admitted as evidence for their consideration. The warrant of arrest stated with specificity the charge that Winters was arrested for.[11] In addition to the specific violation, which the warrant stated, the proposed instruction contained criminal actions that Winters was not charged with. Instructing the jury on the entirety of Code § 18.2-370.1 was unnecessary because they were already given the language of the elements of Code § 18.2-370.1 that Winters was charged with violating and had several instructions on probable cause. As the jury had what was needed to determine whether Roque had probable cause at the time he arrested Winters, including the jury instruction at issue would not have changed the verdict. Therefore, even if the refusal of the proffered jury instruction was an error, it was harmless.

---

[11] The warrant of arrest stated that Winters "did unlawfully and feloniously in violation of Section 18.2-370.1, Code of Virginia: while being eighteen years of age or over and maintaining a custodial or supervisory relationship with S.A. [17 yr old male], a child under the age of 18 who was not the spouse of the accused and who was not emancipated, with lascivious intent, knowingly and intentionally propose an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus, or an act constituting an offense under § 18.2-361 to such child."

II.  Damages for Malicious Prosecution

Roque and Chapman argue that the circuit court erred in excluding evidence related to the termination of Winters's employment with LCPS.[12]  Specifically, as a result of the motion *in limine* hearing, the circuit court ruled that evidence of why Winters was terminated would be excluded unless "[Winters] open[ed] the door to [such] testimony . . . [as] to damages."  Then at trial, the circuit court ultimately did not find that Winters opened the door and excluded the evidence.

A plaintiff's background, education, skills, the work she performs, and the type and character of the injury sustained are all factors that the jury can consider when determining whether a plaintiff's earning capacity has been lessened and whether the opportunity to secure employment in the future is diminished.  *Exxon Corp. v. Fulgham*, 224 Va. 235, 242 (1982).  The plaintiff's emotional condition can also be a factor for the jury to consider.  *Clark v. Chapman*, 238 Va. 655, 663 (1989).  Further, "a plaintiff's work history and quality of past job performance is admissible evidence probative of the plaintiff's claimed damages in the form of future lost income or future lost earning capacity."  *Egan v. Butler*, 290 Va. 62, 70 (2015).  "In order to form a reliable basis for a calculation of future lost income or loss of earning capacity, such

---

[12] As mentioned, "[w]e review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to [exclude] evidence absent a finding of abuse of that discretion."  *Egan v. Butler*, 290 Va. 62, 69 (2015) (second alteration in original) (quoting *Harman v. Honeywell Int'l, Inc.*, 288 Va. 84, 92 (2014)).  "In a civil case, the erroneous exclusion of evidence is reversible error when the record fails to show plainly that the excluded evidence could not have affected the verdict."  *Id.* (quoting *Barkley v. Wallace*, 267 Va. 369, 374 (2004)).  For the reasons stated below, we hold that it was an abuse of discretion to not permit evidence of the reason for Winters's termination as it relates to damages.  Furthermore, "[i]mproperly excluded evidence is reversible error, unless the record plainly shows that the excluded evidence could not have affected the outcome." *Moore v. Joe*, 76 Va. App. 509, 521 (2023).  As the information regarding termination from previous employment could have affected the jury's determination of Winters's earning capacity, the exclusion of this evidence was not harmless error.

evidence mut be grounded upon facts specific to the individual whose loss is being calculated." *Id.*

In the case at hand, Winters sought compensatory damages for her loss of earning capacity and introduced evidence of her past and present employment status. The circuit court allowed evidence of Winters's background and education: she graduated from James Madison University with a bachelor's and master's degree and that she was an English teacher employed by LCPS who had taught advanced language and composition. The jury also heard evidence of Winters's emotional condition as it related to her employability, that she suffered loss of self-esteem, self-confidence, self-worth, and self-perception, as well as physical manifestations of trauma. The circuit court permitted evidence of Winters's employment with LCPS, including her salary, which was used by Dr. Borzilleri as a basis in calculating her future earning capacity.

Notably, Winters testified that "I lost my job, my career . . . I need to go get a job. One, no one would hire me." Winters addresses her employability, or lack thereof. Further, Winters specifically testified that she "cannot get a job that is equivalent to what [she] was making as a teacher." However, when Roque and Chapman attempted to introduce evidence of her termination by LCPS, the circuit court ruled that Winters "has not opened the door" and that evidence was irrelevant. We disagree.

In *Egan*, the Supreme Court of Virginia ruled that the circuit court abused its discretion by excluding evidence of the plaintiff's work history, including reasons for leaving the job. 290 Va. at 70-71. "Utilizing this incorrect legal standard to bar admission of relevant evidence was an abuse of discretion." *Id.* at 71.

"[A] plaintiff's work history and quality of past job performance is admissible evidence probative of the plaintiff's claimed damages in the form of future lost income or future lost earning capacity." *Id.* at 70. Like the Supreme Court stated in *Egan*, "[t]his is the very type of

evidence [the appellants] sought to introduce but which the circuit court excluded as irrelevant." *Id.* When contemplating an award of damages, it would be impossible for a jury, after hearing testimony about one's loss of employment, to make an accurate decision on that person's earning capacity as it relates to salaries, qualifications, education, and background, without also considering reasons as to why they lost their job. In essence, the circuit court ruled that reasons for termination from previous jobs are irrelevant as to a person's employability. The jury was presented with evidence of Winters's salary as a teacher. It would be an absurdity to have the jury consider her previous salary and experience as a teacher when determining her earning capacity without also considering that she was fired for "engag[ing] in an inappropriate social relationship with a student in violation" of a school board policy. We find that, looking at the totality of the evidence Winters presented to support her claim for damages from her loss of earning capacity, the door was opened for Roque and Chapman to introduce evidence of her work history. Accordingly, the circuit court abused its discretion in excluding evidence related to Winters's termination of employment with LCPS as it relates to her recoverable damages.

The remaining assignments of error (one, four, and six) relate to Winters's recoverable damages. We find that the circuit court erred in excluding relevant evidence as it relates to Winters's recoverable damages, as discussed above, that Roque and Chapman were prevented from introducing evidence regarding why Winters was terminated from her employment with LCPS. Because we reverse and remand for a new trial limited to damages, we need not and do not address the remaining assignments of error related to damages.

CONCLUSION

For the reasons stated, we affirm the circuit court's rulings as to liability and we reverse and remand for a new trial on damages.

*Affirmed in part, reversed in part, and remanded.*